UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRIAN KRUEGER,

                    Plaintiff,                             Case No. 17-cv-10574

v.                                          Honorable Thomas L. Ludington

UNITED STATES OF AMERICA,

                    Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

On February 22, 2017, Plaintiff Brian Krueger filed a complaint against Defendant United States of America under the American's with Disabilities Act (ADA), 42 U.S.C. § 12131 and the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671 et seq. Compl. ECF No. 1. The parties stipulated to extend Defendants answer deadline, and Plaintiff filed an amended complaint prior to Defendant filing its Motion to Dismiss. *See* ECF Nos. 8, 9. Defendant has not objected to the filing of the amended complaint and has asked that the Motion to Dismiss be treated as a response to the amended complaint. Reply at 1, ECF No. 14. Accordingly, the Amended Complaint will be construed as the operative complaint.

Plaintiff's amended complaint retains the FTCA claim, asserting one count of negligence by the Department of Veterans Affairs (VA) for improperly designating Plaintiff as a behavioral threat and interfering with his ability to receive healthcare at the VA. Am. Compl. at 14, ECF No. 8. Plaintiff's amended complaint omits the ADA claims and adds a claim under § 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794, alleging that he was denied benefits to which he was entitled, was harassed and interfered with when he attempted to utilize other

benefits, was retaliated against for continuing to seek access to benefits he was rightfully due, and was discriminated against on the basis of his disabilities. Am. Compl. at 13.

## I.

When adjudicating a motion to dismiss for failure to state a claim under rule 12(b)(6), the Court construe's the complaint in the non-movant's favor and accepts all of Plaintiff's factual allegations as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The facts set forth herein are derived from the allegations in Plaintiff's amended complaint.

Plaintiff is a distinguished, honorably discharged veteran of the United States military who specialized in the safekeeping and protection of generals, dignitaries, and other high level military VIPs in the Middle East. Am. Compl. at 2; Resp. at 1. As a result of his service Plaintiff suffers from severe Post-Traumatic Stress Disorder (PTSD) and Bi-Polar Disorder stemming from a head injury, as well as anxiety. Am. Compl. at 2. This case arises from a series of unfortunate, often hostile interactions between Plaintiff and the staff at the VA where he receives treatment for mental health, among other things. *Id.* at 3.

About fifteen years ago Plaintiff was homeless and enrolled in the HUD-VASH housing program, a collaborative program between HUD and VA which combines HUD housing vouchers with VA supportive services to help homeless veterans and their families find permanent housing. Through the HUD-VASH program Plaintiff was placed in a house in Saginaw. *Id.* His utilities were supposed to be paid on his behalf by the HUDVASH program. *Id.* After three months, no payments were forthcoming, his landlord allowed the utility payments to lapse, his power was shutoff during the winter, his pipes froze, and he lost all his food. *Id.* Despite repeatedly contacting the VA, the situation was never rectified. *Id.*  The property was

eventually demolished and Plaintiff was forced to vacate. *Id.* at 6. He was never relocated under the HUDVASH program to a new home. *Id.*

Plaintiff's repeated attempts to secure the benefits to which he was entitled under the HUDVASH program resulted in him being cited for malicious use of a telephone. *Id.* at 4–5. The VA also placed him on a behavioral "flag," designating him as a dangerous individual requiring supervision on VA premises, asked him to sign a "behavioral agreement." *Id.* at 6, 11; Resp. at 2–3. As a result, Plaintiff was required to be escorted by guards every time he visited the VA to receive treatment. The relationship between Plaintiff and the VA further deteriorated when he attempted to visit the VA Director, he was forced to sit on the ground by the guards, aggravating his back injury, and was ordered to leave the premises. *Id.* at 7. His phone calls to the VA resulted in the police showing up at his home, arresting him, and jailing him for three days. *Id.* at 7. He was cited again for malicious use of a telephone and placed on probation. *Id.* Continued attempts to contact the VA regarding his concerns about his benefits resulted in his probation being revoked and him being jailed for two weeks. *Id.* at 8.

After these incidents, Plaintiff began making great strides in his treatment under the direction of Dr. Elaine Carroll. Dr. Carroll wrote a scathing letter to Saginaw County District Court Judge A.T. Frank who was presiding over a drinking related charge against the Plaintiff, in which Dr. Carroll criticized the VA and the negative impact they had on Plaintiff's condition. *Id.* at 8. This caused retaliation by the VA against Plaintiff. *Id.* Plaintiff remained on the behavioral flag at the VA, and had additional restrictions placed on him. *Id.* at 9. He was no longer permitted to call the VA staff directly, but had to relay his requests directly to an answering machine. *Id.* The VA staff, including his guards and a therapist, also began to hassle Plaintiff about bringing his service dog, Kola, into the VA. *Id.* at 8. The therapist suggested that the dog

was a crutch and needed to be taken away. *Id.* at 9. Security staff told Plaintiff that Kola could not be inside, and "Kola was eventually prohibited by VA personnel from performing his tasks and from being allowed to sit next to the Plaintiff inside the VA." *Id.*

The situation reached a point of conflict when Plaintiff went to the VA Urgent-Care Center after he experienced chest pains. *Id.* at 10. There were no on-duty officers to escort Plaintiff, and he was thus unable to go into the emergency room through the main entrance. *Id.* at 10. Plaintiff honked his horn at the ambulance bay but received no response. *Id.* He called 911 and, at the direction of 911 operators, drove his truck into the ambulance bay to gain access to the emergency room. *Id.* Three officers then ran out and accosted Plaintiff demanding that he exit the vehicle but keep his dog inside the vehicle. *Id.* In order to perform his service function, Kola is at all times tethered to Plaintiff. *Id.* Thus, Plaintiff was unable to comply with the officers' instructions, which he tried to explain to them. *Id.* The confrontation triggered Plaintiff's PTSD, which caused "Kola to place himself between Plaintiff and the VA officers, pulling, nipping, and herding the Plaintiff away from the source of stress as he was trained to do." *Id.* The officers then demanded that Plaintiff "get off the fucking property or he would go to jail" and that his dog was "unruly and dangerous." *Id.*

The situation eventually de-escalated, the officers allowed him entry into the ER, but he was issued two citations while in his hospital bed, one for disturbing the peace on federal property and another for disorderly conduct. *Id.* at 11. Plaintiff was assigned a new social worker who challenged his behavioral flag, which was ultimately removed. *Id.* However, the officers' treatment of Plaintiff did not improve, he became fearful of receiving treatment at the VA, and wished to continue his treatment in a non-hostile environment. *Id.* Plaintiff sought to obtain care outside of the VA while retaining access to VA benefits through the Veteran's Choice Program.

*Id.* at 12. Plaintiff had to seek permission from the local VA to take advantage of the program, but they did not allow him to apply. *Id.*

Most recently, in 2017, Plaintiff attempted to look into physical therapy treatment options at the VA, but wanted his concerns about retaliation and harassment addressed first. *Id.* at 12. His social worker contacted VA administration, who indicated that they would not discuss any concerns, and that they would only accept a written claim through their legal department. *Id.* at 12. Plaintiff now refuses to return to the VA unless it is unavoidable due to continuing obstructionism and harassment by the VA staff. *Id.* at 13.

Plaintiff alleges that the VA violated § 504 of the Rehabilitation Act. *Id.* He alleges they denied him access to the benefits to which he is entitled, such as the HUDVASH and Veterans Choice Programs. *Id.* He alleges the VA denied him these benefits on the basis of his disabilities and their associated accommodations, and in retaliation for his criticism of the VA and requests to secure the benefits to which he was entitled. *Id.* He also alleges that the VA interfered with his utilization of services he was receiving by imposing unreasonable and unwarranted restrictions on his ability to access the VA, creating a hostile environment, inhibiting his ability to seek emergency care, and inhibiting his use of this service dog. *Id.* at 13.

Plaintiff also alleges negligence by the VA under the FTCA. *Id.* at 14. He alleges the VA breached their duty to Plaintiff as a veteran and disabled individual by failing to allow Plaintiff to access the benefits to which he was entitled, and improperly imposing rules and requirements restricting his access to other VA services he was receiving. *Id.*

As a result of the alleged Rehabilitation Act and FTCA violations Plaintiff alleges he "sustained financial hardship, emotional distress, personal and professional growth opportunities,

access to the benefits and services of programs to which he is entitled, and a loss of reputation in the community." *Id.* at 14.

## II.

Defendant's motion raises four principal arguments, of which two are jurisdictional arguments under 12(b)(1), one raises the statute of limitations, and one asserts failure to state a claim under 12(b)(6). Mot. at 1, ECF No. 9.

Defendant contends this Court lacks subject matter jurisdiction because 1) the Court of Veterans Appeals (CVA) has exclusive jurisdiction over "claims regarding veterans benefits," and 2) Plaintiff only exhausted administrative remedies with respect to one claim which was resolved in his favor and is therefore moot. Mot. at 5, 9. Plaintiff responds that the CVA does not have jurisdiction over his harassment, interference, and retaliation claims, which are distinct from denial of benefits claims. Resp. at 10. Plaintiff also argues that he exhausted administrative remedies as his claim was not resolved in his favor and is therefore not moot. Resp. at 14.

Defendant asserts that Plaintiff's Rehabilitation Act claims are barred by a three-year statute of limitations, and Plaintiff's FTCA claim is barred by 28 U.S.C. § 2401(b), which requires Plaintiff to 1) file an administrative claim within two years of accrual, and 2) file an action within 6 months of final denial. Mot. at 19–20. Plaintiff contends both claims are timely. With respect to his Rehabilitation Act claims, Plaintiff concedes that some relevant events occurred outside the limitations period. Resp. at 16. However, Plaintiff contends that because he was *left* on the behavioral flag for an unreasonable amount of time, each time he visited the VA a new violation occurred. *Id.* With respect to his FTCA claim, Plaintiff responds that he filed an administrative tort claim with the VA and filed a complaint in this Court within six months of the final denial of that claim. Resp. at 20.

Defendant believes the amended complaint fails to state a claim under the Rehabilitation Act, which requires that Plaintiff 1) allege that his disabilities were considered by the VA in formulating a discriminatory policy or 2) allege that the VA could have reasonably accommodated his disability but refused to do so. *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459–60 (6th Cir. 1997); Mot. at 16–17. Finally, Defendant argues that Plaintiff has not pled any actionable torts under the FTCA. Plaintiff believes the amended complaint states a claim under the Rehabilitation Act by alleging that the VA placed him on a behavioral flag because of his disability, and refused to accommodate his service dog. Resp. at 18. Plaintiff believes he pled a valid negligence cause of action under the FTCA by alleging that the VA breached its duty to him as a veteran by negligently placing him on a behavioral flag and keeping him there, which resulted in significant emotional distress. *Id.* at 23.

## III.

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal for lack of subject matter jurisdiction. A 12(b)(1) motion can challenge the claim of jurisdiction on the face of the complaint if Plaintiff's allegations, accepted as true, do not support jurisdiction (a facial challenge). *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). A 12(b)(1) motion can also challenge the factual basis for jurisdiction asserted in the complaint (a factual challenge). *Id.* In the case of a factual challenge, the Court has broad discretion to consider evidence outside the pleadings when determining the existence of subject matter jurisdiction. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). Plaintiff bears the burden of establishing the facts giving rise to jurisdiction. *Id.*; *DLX, Inc.*, 381 F.3d at 511.

A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678,

(2009).  In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678-79 (quotations and citation omitted).

### A.

The Veteran's Judicial Review Act of 1988 (VJRA) vests exclusive jurisdiction over claims regarding veterans benefits with the Court of Veterans Appeals (CVA), whose decisions are reviewed by the Court of Appeals for the Federal Circuit. 38 U.S.C. §§ 511, 7252, 7292; *Newsom v. Dep't of Veterans Affairs*, 8 F. App'x 470, 471 (6th Cir. 2001); *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997). This jurisdiction extends to "all questions of law and fact . . . that affect[] the provision of benefits . . . to veterans." 38 U.S.C. §§ 511, 7252, 7292; *Beamon*, 125 F.3d at 967. The VJRA thus "preclude[s] district court jurisdiction over VA decisions relating to benefits claims, including decisions of constitutional issues." *Rodriguez v. United States*, 2015 WL 4389635, at *1 (N.D. Ohio July 15, 2015) (citing *Beamon*, 125 F.3d at 967). The exclusive jurisdiction of the CVA extends not only to claims for denial of VA benefits, but constitutional issues such as retaliation for exercise of first amendment rights. *Hicks v. Veterans Admin.*, 961 F.2d 1367 (8th Cir. 1992).

-8-

**B.**

The Rehabilitation Act prohibits discrimination against disabled individuals by entities receiving federal funding, as well as federal contractors and subcontractors. Although the 1973 Act did not create an express private cause of action, courts have recognized an implied private right of action under § 504. *See*, *e.g.*, *Smith v. U.S. Postal Serv.*, 742 F.2d 257, 259 (6th Cir. 1984). The Rehabilitation Act and the Americans with Disabilities Act cover largely the same conduct, namely discrimination against disabled individuals. The main distinction between the Rehabilitation Act and the ADA is that the latter extends to purely private entities whereas the Rehabilitation Act is limited to entities receiving federal financial assistance. *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir. 1997). The ADA also does not provide a cause of action against the United States, whereas the Rehabilitation Act does. *See Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007). The Rehabilitation Act provides, in relevant part, that: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C.A. § 794.

**i.**

The Rehabilitation Act requires exhaustion of administrative remedies as a prerequisite to a claim. *Smith v. U.S. Postal Serv.*, 742 F.2d 257, 258 (6th Cir. 1984). Exhaustion of administrative remedies is a threshold requirement to a reviewing Court's exercise of subject matter jurisdiction. *Howell by Howell v. Waterford Pub. Sch.*, 731 F. Supp. 1314, 1315 (E.D. Mich. 1990). Therefore, in response to a factual challenge to subject matter jurisdiction, a court has discretion to consider matters outside of the pleadings in determining whether exhaustion has

occurred, and the Plaintiff has the burden of establishing exhaustion. *Cartwright*, 751 F.3d at 759; *DLX, Inc.*, 381 F.3d at 511. Pursuant to § 504 of the Rehabilitation Act, the VA has promulgated regulations setting forth the requirements for filing an administrative claim. *See* 38 C.F.R. § 15.101 *et seq*. The regulations require that a written complaint be submitted to the agency setting forth the factual basis for the alleged discrimination under the Rehabilitation Act. 38 C.F.R. § 15.103. Upon receipt of a decision, the complainant has 90 days to appeal the findings of fact and conclusions of law of the agency. 38 C.F.R. § 15.103.

### ii.

Where a federal statute providing a cause of action does not specify a limitations period, courts adopt the statute of limitations and tolling provisions of the most analogous state law, provided that application thereof is not at odds with the operation and purpose of the federal law. *See North Star Steel Co. v. Thomas*, 515 U.S. 29 (1995); *Bishop v. Children's Ctr. For Developmental Enrichment*, 618 F.3d 533, 537 (6th Cir. 2010). In a Rehabilitation Act claim, the most analogous state law is the personal injury statute where the injury took place. *McCormick v. Miami Univ.*, 693 F.3d 654, 662 (6th Cir. 2012). The limitations period for personal injuries in Michigan is three years. M.C.L. § 600.5805.

Although Rehabilitation Act claims adopt the statute of limitations and tolling provisions of the most analogous state law, accrual of the claim is governed by federal common law, which provides that a claim accrues when a reasonable person knows or should know of his injury and its cause. *Bishop*, 618 F.3d at 536 (6th Cir. 2010); *Campbell v. Grand Trunk W. R. Co.*, 238 F.3d 772, 777 (6th Cir. 2001); *see also Heath v. Bd. Of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731 (5th Cir. 2017), *as revised* (Mar. 13, 2017). "Where a specific date of injury cannot be determined because an injury results from continual exposure to a harmful condition

over a period of time, a plaintiff's cause of action accrues when the injury manifests itself." *Fries v. Chicago & Nw. Transp. Co.*, 909 F.2d 1092, 1094 (7th Cir. 1990) (citing *Urie v. Thompson*, 337 U.S. 163 (1949)).

## C.

The FTCA grants a limited waiver of sovereign immunity by the United States from civil suits arising out of the acts of its agents. *See Dalehite v. United States*, 346 U.S. 15 (1953); 28 U.S.C.A. §§ 1346, 2671–2678, 2680. The act waives sovereign immunity and imposes tort liability on the United States "to the extent that state-law would impose liability on a private individual in similar circumstances." *Young v. United States*, 71 F.3d 1238, 1241 (6th Cir. 1995); 28 U.S.C. § 2674 (1988).

As a jurisdictional prerequisite to suit under the FTCA, a claimant must present a written administrative claim to the agency employing the person whose act or omission gave rise to the injury. *McNeil v. United States*, 508 U.S. 106 (1993); 28 U.S.C. § 2675. The claimant must "1) give[] the agency written notice of his or her claim sufficient to enable the agency to investigate and 2) place a value on his or her claim." *Sellers v. United States*, 870 F.2d 1098, 1101 (6th Cir. 1989).

The limitations period is set forth in 28 U.S.C. § 2401(b):

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

## IV.

### A.

Here, Plaintiff's Rehabilitation Act claims are within the exclusive jurisdiction of the Court of Veterans Appeals. Plaintiff did not exhaust his administrative remedies with respect to these claims. Plaintiff's Rehabilitation Act claims are barred by the applicable statute of limitations, and Plaintiff's amended complaint does not state a claim for violation of the Rehabilitation Act.

### i.

Plaintiff's claims for improper denial of HUDASH and Veteran's Choice benefits are clearly within the exclusive jurisdiction of the Court of Veterans Appeals, and the Court of Appeals for the Federal Circuit, to decide "all questions of law and fact . . . that affect[] the provision of benefits . . . to veterans." 38 U.S.C. §§ 511, 7252, 7292; *Beamon*, 125 F.3d at 967. Indeed, Plaintiff's response brief reveals that Plaintiff does not contest this fact. The response brief no longer asserts a claim for benefits denial, and distills Plaintiffs claims as follows:

> Plaintiff has two primary claims at bar. First, he claims that the VA was negligent in placing him inappropriately on a "behavioral flag," and leaving him on the "behavioral flag" for an excessive period of time without appropriate reason for doing so, which exacerbated his PTSD. And, he claims that the VA violated the Rehab Act by (1) inappropriately discriminating against his PTSD by putting him on the "behavioral flag" for an excessive amount of time (2) failing to accommodate his use of a service dog while accessing services, and (3) retaliating against him for complaining about these violations

The claims stemming from the imposition of the behavioral flag, failure to accommodate his service dog, and retaliation, are also within the exclusive jurisdiction of the Court of Veterans Appeals. Plaintiff contends that not all claims "tangentially related" to the provision of benefits are within the CVA's jurisdiction, such as a negligence claim by a veteran who slips on a banana peel on VA premises. Resp. at 10, ECF No. 11. Plaintiff contends "there must be some lines of

demarcation as to which claims by a veteran against the VA and its staff are, and are not, subject to the procedures of the VJRA." *Id.*

The line of demarcation is contained in the language of the statute, which extends CVA jurisdiction to "all questions of law and fact . . . that affect[] the provision of benefits . . . to veterans." 38 U.S.C. §§ 511, 7252, 7292. Adjudication of the VA's liability for injuries to a Veteran who slips on a banana peel would fall outside the scope of CVA jurisdiction, as it involves no question of law or fact affecting the provision of benefits to a veteran. However, imposing restrictions on Plaintiff's ability to access his benefits, such as requiring a police escort while on VA premises, is a decision that directly "affects the provision of benefits . . . to [a] veteran[]. 38 U.S.C. §§ 511, 7252, 7292; *Beamon*, 125 F.3d at 967.

Furthermore, case law has extended CVA jurisdiction to constitutional claims, such as a claim of retaliation against a veteran for exercising his first amendment rights. *See, e.g.*, *Hicks v. Veterans Admin.*, 961 F.2d 1367, 1368 (8th Cir. 1992). In *Hicks*, the plaintiff alleged that the VA retaliated against him by reducing his benefits because he complained about his treatment at the VA. *Id.* Here, Plaintiff asserts an analogous claim, namely that behavioral restrictions were imposed on him, restricting his access to VA benefits, in retaliation for him "criticizing the VA's previous actions." Am. Compl. at 13. Thus, his claims are within the exclusive jurisdiction of the CVA.

### ii.

Plaintiff has also failed to exhaust administrative remedies with respect to his Rehabilitation Act claims. Exhaustion is a jurisdictional prerequisite. *Howell by Howell v. Waterford Pub. Sch.*, 731 F. Supp. 1314, 1315 (E.D. Mich. 1990). Thus, in response to a factual challenge to subject matter jurisdiction, a court has discretion to consider matters outside of the

pleadings in determining whether exhaustion has occurred, and Plaintiff bears the burden of establishing exhaustion with respect to *each* claim. *See Cartwright*, 751 F.3d at 759; *DLX, Inc.*, 381 F.3d at 511; *Howell*, 731 F. Supp. at 1315.

Here, the allegations in the amended complaint do not establish exhaustion, as the amended complaint contains only a bare assertion that "Plaintiff has exhausted his available administrative remedies through the VA," without setting forth any steps taken to exhaust administrative remedies. Am. Compl. at 13. Nor do the exhibits attached to the briefing establish exhaustion. The record establishes exhaustion only with respect to his claim for interference with his service dog, which is moot. The record does not establish that Plaintiff exhausted his remedies with respect to any other claims.

VA regulations require that a written complaint be submitted to the agency setting forth the factual basis for the alleged discrimination under the Rehabilitation Act. 38 C.F.R. § 15.103. Upon receipt of a decision, the complainant has 90 days to appeal the findings of fact and conclusions of law of the agency. 38 C.F.R. § 15.103. Plaintiff attaches to his response brief the Letter of Resolution from the VA director dated May 26, 2015. Resp. Ex. A (Letter of Resolution), ECF No. 11-1. The letter indicated that VA personnel had taken "appropriate steps to resolve this complaint" and that the file had been closed. *Id.* at 3. The letter advised Plaintiff of his right to appeal that determination. *Id.*

Plaintiff states in his response that he appealed to the undersecretary of health as he did not agree that his concerns were remedied *because he was still being harassed about his dog*. Resp. at 14. Plaintiff does not produce his appeal, but cites to Defendant's Exhibit 1, which acknowledges that he filed an appeal which was denied as moot. Mot. Ex. 1 (Biggins Decl.) at 4, ECF No. 9-2. Plaintiff does not explain how his claim was not mooted by the Letter of

Resolution. It is questionable to begin with whether Plaintiff's amended complaint alleges that he ever was denied the right to use his service dog on VA premises. Nor does he allege, via his amended complaint or response brief, that he was denied the ability to use his service dog after his administrative claim was resolved. Plaintiff merely asserts that "harassment" about his dog continued without explaining what this alleged harassment entailed. Thus, the claim is moot.

Additionally, Plaintiff has not established exhaustion with respect to each claim, including his allegations that behavioral restrictions were imposed on Plaintiff on the basis of his disability, and retaliation for his previous complaints. Rather, Plaintiff's response brief indicates that the appeal was limited to the claim regarding his service dog. Plaintiff does not establish or allege that he appealed the resolution of his other rehabilitation act claims. Accordingly, Plaintiff has failed to carry his burden to establish administrative exhaustion.

### iii.

Plaintiff's rehabilitation act claims are also time barred. Plaintiff's claim accrued when he was placed on the behavioral flag, as this is when he knew or should have known of his injury and its cause. *See Bishop*, 618 F.3d at 536 (6th Cir. 2010). Plaintiff concedes that "this discrete event is outside the limitations period," but argues that his injury inheres in the fact that he was left on the behavioral flag for an unreasonable amount of time, and thus "every time Plaintiff showed up at the VA for treatment, and had to be followed by the guards, he suffered fresh damages." Resp. at 16. Plaintiff provides no legal authority for this assertion. Although not explicitly stated, Plaintiff appears to be invoking the "continuing violations" doctrine, which has been rejected by the Michigan Supreme Court. *See Garg v. Macomb Cty. Cmty. Mental Health Servs.*, 472 Mich. 263, 281 (2005).

Even if that doctrine was potentially applicable, Plaintiff's claim is still barred, as the initial act of imposing a behavioral flag on Plaintiff "has the degree of permanence" which should indicate that the "continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate." *Garg*, 472 Mich. at 281. When the behavioral flag was imposed upon him, Plaintiff was on notice of the restrictions he would have to abide by when visiting the VA, and knew or should have known of his injury. Thus, a new cause of action did not accrue "each time he showed up at the VA for treatment, and had to be followed by the guards." Resp. at 16.

**iv.**

Plaintiff's allegations, taken as true, do not state a claim for violation of the Rehabilitation Act, which requires that Plaintiff either 1) allege that his disabilities were actually considered by the defendant in formulating a discriminatory policy or 2) allege that defendant could have reasonably accommodated his disability but refused to do so. *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459–60 (6th Cir. 1997). Despite Plaintiff's attempt in the response brief to editorialize the allegations in the amended complaint, a close reading of the amended complaint reveals that he did not allege a violation of Rehabilitation Act under either method provided in *McPherson*.

**a)**

The closest the complaint comes to alleging a violation of the Rehabilitation Act is under Count I, containing paragraphs 102-110, in which the factual allegations are distilled down and connected to purported violations of law. Specifically, paragraph 105 states that "despite being a qualified individual, the Plaintiff has been and is continued to be *denied benefits and services by*

*the Defendant* through the actions of the VA *on the basis of his disabilities and its associated accommodations.*" Am. Compl. at 13 (emphasis added).

Thus, paragraph 105 alleges that the VA took adverse action against him because of his disabilities, as required by *McPherson*. However, the adverse action complained of in paragraph 105 is the denial of "benefits and services," and not the behavioral flag or retaliation. Plaintiff apparently concedes that any claims for his adverse benefits determination would be in the CVA's exclusive jurisdiction: "the case at bar is not a claim merely challenging an adverse benefits determination." Resp. at 12. Plaintiff's response brief shifts the focus of the Rehabilitation Act claim from the denial of "benefits and services" as set forth in the complaint, to 1) the imposition of the behavioral flag, 2) the interference with his service dog, and 3) the retaliation against him for his complaints. Resp. at 9. However, Plaintiff's amended complaint never alleges a connection between those three adverse actions and the VA's purported discrimination based on his disabilities. Plaintiff alleges this connection for the first time in the response brief. Thus, Plaintiff's amended complaint does not allege that his disabilities were "actually considered by [the defendant] in formulating or implementing" a discriminatory policy. *McPherson*, 119 F.3d at 459–60.

**b)**

The amended complaint also fails to allege that Defendant "could have reasonably accommodated his disability but refused to do so." *Id.* Plaintiff directs the Court to the allegations regarding interference with the use of his service dog, and contends that those allegations state a violation of the Rehabilitation Act under prong two of *McPherson*. Specifically, Paragraph 59 states: "one action taken by the VA was attempting to remove Kola from Plaintiff's possession; in particular, a VA therapist . . . went so far as to claim that Kola was

a crutch and should be taken away." Firstly, Plaintiff does not allege the VA took any action in response to the therapist's suggestion, but appears to allege that the therapist's suggestion was the actionable conduct in and of itself. Secondly, Paragraph 61 of the complaint states "the therapist eventually conceded." Thus, neither of these paragraphs allege a failure to accommodate Plaintiff's service dog.

Plaintiff's response brief attempts to editorialize the amended complaint, stating that "Plaintiff was repeatedly and unlawfully prevented from having Kola at the VA facility," citing to paragraphs 66-68 of the amended complaint. Resp. at 19. However, the amended complaint contains no such allegations. Paragraph 66 alleges that the officers "harassed him over Kola sitting next to Plaintiff on a chair, claiming that the dog couldn't be inside." However, it does not allege the officers prevented Plaintiff from having his dog at the VA facility, or that the officers took any adverse action whatsoever with respect to his dog.

Paragraph 68 alleges that "Kola was eventually prohibited from *performing his tasks* and from being allowed to *sit next to* Plaintiff inside the VA." Am. Compl. at 9 (emphasis added). It does not allege that the officers prevented Plaintiff from having his dog at the VA. The allegation that the VA prevented Kola from "performing his tasks" is at best vague and conclusory. The allegation that they did not allow the dog to "sit next to the Plaintiff at the VA" is the closest the complaint comes to alleging a failure to accommodate Plaintiff's disability. Am. Compl. at 9. However, paragraph 68 does not allege that Plainitff was "prevented from having Kola at the VA facility" or "prevented from having Kola in the waiting room with him, or at appointments," as stated in the response brief. Resp. 18-19.

The most generous reading of paragraph 68 is that it alleges the dog was prevented from being in immediate physical proximity to Plaintiff and, as explained in paragraph 64, "close

proximity to the Patient is very important, and as a result the dog has to be tethered to the Plaintiff to maintain this proximity." Am. Compl. at 9. Notably, nowhere does the amended complaint allege that the dog was ever required to be untethered from Plaintiff. Even if paragraph 68 is read in light of paragraph 64, it does not specify what adverse action the VA took, if any. Plaintiff does not allege what disability accommodations he required and how the VA denied him those accommodations. Thus, the amended complaint does not contain "sufficient factual matter, accepted as true, to state a claim that" defendant "could have reasonably accommodated his disability but refused to do so." *Iqbal*, 556 U.S. at 678-79; *McPherson* at 459–60 (6th Cir. 1997).

Finally, Plaintiff's response alleges that Plaintiff "was cited for the dog's 'unruliness' when Kola responded as he was trained to do to a PTSD Plaintiff had due to VA police harassment," citing to paragraphs 80-84 of the amended complaint. Resp. at 18. However, paragraphs 80-84 contain no such allegations. Those paragraphs describe Plaintiff's encounter with VA officers when he sought treatment for chest pains at the VA, but was unable to gain access to the emergency room and was forced to drive his truck into the ambulance bay. *Id.* at 10. The precise allegations in the amended complaint do not match the description in the response brief.

> 79. When Plaintiff reached the ambulance entrance, three officers ran out with their hands on their weapons and aggressively demanded that he remove himself from his vehicle immediately.
>
> 80. When Plaintiff attempted to comply the officers told him to keep his dog in vehicle. Plaintiff attempted to explain that he could not comply, stating that Kola was tethered to him.
>
> 81. The increase in the Plaintiff's anxiety from the confrontation, and from his worries about his chest pain, triggered his PTSD. Sensing the Plaintiff's increased stress, Kola attempted to place himself between Plaintiff and the VA Officers,

pulling, nipping, and herding the Plaintiff away from the source of stress as he was trained to do.

82. *The officers involved were ignorant of the reasons for Kola's actions*. While Kola attempted to pull the Plaintiff back into the truck to remove him from the confrontation, the officers demanded that he "get off the fucking property or he would go to jail" and that his dog was "*unruly and dangerous*".

83. Plaintiff, despite being in the midst of a PTSD episode, *was able to eventually explain to the officers what was going on. The officers finally relented and let him in to the emergency area*.

84. As a result of the confrontation initiated by the officers at the VA, the Plaintiff *was issued two citations* while sitting in a hospital bed in the ER; *one for honking the horn* on his truck (disturbing the peace on federal property) *and another for disorderly conduct*.

Am. Compl. at 11 (emphasis added). Contrary to the assertion in Plaintiff's response brief, nowhere does the complaint allege that he "was cited for the dog's 'unruliness.'" Resp. at 18. Rather, paragraph 82 alleges that the officers stated when they told him to leave the property that the dog was "unruly and dangerous," and paragraph 84 alleges that he was cited for honking his horn and for disorderly conduct. Am. Compl. at 11.

Furthermore, paragraph 82 alleges that the "officers involved were ignorant of the reasons for Kola's actions." This allegation is entirely inconsistent with the notion that Plaintiff's disability, namely his PTSD and need for a service dog, was taken into consideration by the officers at all, or that they refused to accommodate his disability. Paragraph 83 states that Plaintiff "was able to eventually explain to the officers what was going on." after which they "finally relented and let him in to the emergency area." This too is inconsistent with the notion that they refused to accommodate his disability.

Thus, the allegations in the complaint, taken individually and as a whole, fail to allege "sufficient factual matter, accepted as true, to state a claim" that the VA "could have reasonably

accommodated his disability but refused to do so." *Iqbal*, 556 U.S. at 678–79; *McPherson* at 459–60 (6th Cir. 1997).

**v.**

For the foregoing reasons, Plaintiff's Rehabilitation Act claims are within the exclusive jurisdiction of the CVA, Plaintiff has failed to exhaust administrative remedies with respect to these claims, Plaintiff's claims are time barred, and Plaintiff's amended complaint does not state a claim for violation of the Rehabilitation Act. Accordingly, these claims will be dismissed.

**B.**

Plaintiff's FTCA claims are timely and Plaintiff has established exhaustion of administrative remedies. However, they are within the exclusive jurisdiction of the CVA, and Plaintiff's amended complaint fails to plead any actionable tort under the FTCA.

**i.**

Contrary to Defendant's assertion, Plaintiff's FTCA claims are timely and Plaintiff has established exhaustion. Defendant asserts that under section 2401(b):

> "[a] tort claim against the United States shall be forever barred unless" it complies with two separate deadlines. 28 U.S.C. § 2401(b). First, all administrative claims must be "presented in writing to the appropriate Federal agency within two years after such claim accrues." Id. Second, any action must be "begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."

Resp. at 19 (quoting 28 U.S.C. § 2401(b)). However, the language of 28 U.S.C. § 2401(b) clearly indicates that the two deadlines are *alternatives*, not two distinct requirements that must both be complied with.

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues *or* unless action is begun within six months after the date of mailing, by

> certified or registered mail, of notice of final denial of the claim by the agency to
> which it was presented.

(emphasis added). Here, Plaintiff did not present his claim in writing within two years after it

accrued. However, he did comply with the second alternative, namely beginning an action within

six months after the mailing of a notice of final denial by the VA. Indeed, the letter from Chief

Counsel McGuire denying Plaintiff's FTCA administrative tort claim, which Plaintiff filed via

form SF-95, describes itself as a "final denial," and indicates that Plaintiff may request a

reconsideration of the decision or "[i[n the alternative, if you are dissatisfied with the denial of

your claim, you may file directly under the FTCA . . . in a Federal District Court." Resp. Ex. E

(Denial of FTCA claim), ECF No. 11-5. Plaintiff did indeed file in Federal District Court within

six months of that decision. Thus, Plaintiff's FTCA claims are not time barred. Furthermore,

filing form SF-95 fulfilled his responsibility with respect to administrative exhaustion.

### ii.

However, Plaintiff's FTCA claims are within the exclusive jurisdiction of the CVA for

the same reasons as set forth in section IV. A. (i). above.

Count II of the amended complaint sets forth the negligence claim under the FTCA. Am.

Compl. at 14. Paragraph 113 states that "Defendant had a legal duty to Plaintiff both as a veteran

and as a disabled individual under Section 504 of the Rehabilitation Act of 1973." *Id.* Paragraph

114 states that "Defendant breached that duty by failing to allow the Plaintiff access to benefits

and care for which he was entitled." This allegation clearly falls within the jurisdiction of the

CVA to adjudicate "all questions of law and fact . . . that affect[] the provision of benefits . . . to

veterans." 38 U.S.C. §§ 511, 7252, 7292; *Beamon*, 125 F.3d at 967.

Under his FTCA claim, Plaintiff also alleges that the VA wrongfully "impos[ed]

additional rules and requirements that only applied to him, interfering in the Plaintiff's ability to

utilize the rights to which he was entitled as a disabled veteran." *Id.* The VA imposed "rules and requirements" on Plaintiff as a condition to him receiving care at the VA facilities. The propriety of those "rules and requirements" is a matter to be adjudicated by the CVA pursuant to their exclusive jurisdiction to adjudicate "all questions of law and fact . . . that affect[] the provision of benefits . . . to veterans." *See* 38 U.S.C. §§ 511, 7252, 7292; *Beamon*, 125 F.3d at 967.

### iii.

Furthermore, Plaintiff has not pled a valid tort claim under the FTCA. Under the FTCA the United States may be held liable for a tort claim to the same extent as any private individual would be under the law of the jurisdiction where the tort occurred. 28 U.S.C. § 2674. Thus, in this case, Plaintiff must plead an actionable tort under Michigan law applicable to private persons. *See Myers v. United States*, 17 F.3d 890, 899 (6th Cir. 1994). Plaintiff alleges that Defendant had a "legal duty to Plaintiff both as a veteran and as a disabled individual under Section 504 of the Rehabilitation Act of 1973" which it breached by "failing to allow the Plaintiff access to benefits and care for which he was entitled." Am. Compl. at 14. Plaintiff has identified no legal duty *applicable to private persons* that the VA has breached here. (*See United States v. Olson,* 546 U.S. 43 (2005) ("The Act says that it waives sovereign immunity 'under circumstances where the United States, if a *private person,*' not 'the United States, if a state or municipal entity,' would be liable.")).

The closest the amended complaint comes to alleging a negligence cause of action is if it is read to allege negligent infliction of emotional distress (NIED), although the complaint seems to allege "emotional distress" merely as an element of damages resulting from other allegedly negligent behavior: "[a]s a result of the actions of the Defendant, taken through the VA, Plaintiff has sustained financial hardship, emotional distress . . ." Am. Compl. at 14.

Defendant asserts that Plaintiff failed to state an NIED claim because he did not allege a "physical manifestation of that distress," as required by Michigan Law. Reply. at 12; *Henry v. Dow Chem. Co.* 701 N.W.2d 684, 692 (Mich. 2005). To the contrary, Plaintiff clearly alleges a physical manifestation of his distress, as paragraph 73 of the amended complaint alleges "Plaintiff began to experience chest pains to due stress." Am. Compl. at 10. However, Plaintiff has still failed to state an NIED claim, as Michigan does not recognize an NIED cause of action "beyond the situation where a plaintiff witnesses a negligent injury to a third person and suffers mental disturbance as a result." *Duran v. Detroit News, Inc.*, 200 Mich. App. 622, 629 (1993) (citing *Wargelin v. Mercy Health Corp*, 149 Mich. App. 75 (1986)).

As Plaintiff's FTCA claims are within the exclusive jurisdiction of the CVA, and Plaintiff's amended complaint fails to plead any actionable tort under the FTCA, Plaintiff's FTCA claims will be dismissed.

## V.

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss, ECF No. 9, is **GRANTED**.

It is further **ORDERED** that Plaintiff's Complaint, ECF No. 1, and Amended Complaint, ECF No. 8, are **DISMISSED**.


Dated: November 14, 2017                               s/Thomas L. Ludington
                                                       THOMAS L. LUDINGTON
                                                       United States District Judge

-24-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 14, 2017.

s/Kelly Winslow
KELLY WINSLOW, Case Manager